IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GROUP MANAGEMENT SERVICES, INC.**<br><br>　　**Plaintiff**<br>**v.**<br><br>**SAMUEL R. SPIRK, ALYSA M. THUR, and VENSURE EMPLOYER SERVICES, INC., d/b/a VENSURE EMPLOYER SOLUTIONS**<br><br>　　**Defendants.** | **CASE NO. 5:24-cv-01831** |

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

This matter comes before the Court pursuant to Plaintiff Group Management Services, Inc.'s ("GMS") Motion for a Temporary Restraining Order (the "Motion") pursuant to Rule 65 of the Federal Rules of Civil Procedure against Defendants Samuel R. Spirk ("Spirk"), Alysa M. Thur ("Thur"), and Vensure Employer Services, Inc. d/b/a Vensure Employer Solutions and affiliates ("Vensure").  The Court, having reviewed and considered GMS's Motion, Memorandum in Support, Verified Complaint, and attorney certification, and having held a hearing on same, finds that GMS has satisfied the requirements of Rule 65 of the Federal Rules of Procedure for obtaining a temporary restraining order against Defendant.

It is therefore ORDERED, ADJUGED and DECREED that:

1.　　To protect customer relationships and goodwill, its unique training program, proprietary information and trade secrets, and its other legitimate interests that are protectable under Ohio law, GMS required Spirk and Thur to agree to a substantively identical comprehensive agreement providing for protection of GMS's proprietary information and trade secrets, as well as other reasonable restrictions on Spirk's and Thur's activities during and after their employment

with GMS. For valid consideration, Spirk and Thur each entered into this "Ohio Confidentiality and Non-Compete Agreement" (the "Restrictive Covenant Agreement") with GMS. Ohio law governs the Restrictive Covenant Agreements.

2. In a further effort to protect customer relationships and goodwill, its unique training program, GMS's proprietary information and trade secrets, and its other legitimate interests that are protectable under Ohio law, GMS required Spirk and Thur each to sign a substantively identical Year-End Payment Agreement and Release (the "Year-End Agreement"), in which Spirk and Thur each reaffirmed the promises, conditions and restrictions of the Restrictive Covenant Agreement. Ohio law governs the Year-End Agreement. The Restrictive Covenant Agreement and Year-End Agreement are collectively referred to herein as the "Agreements" (respectively, either "Spirk Agreements" or "Thur Agreements").

3. In Section 1 of the Restrictive Covenant Agreements, Spirk and Thur each agreed as follows regarding non-competition and non-solicitation:

> 1. <u>Non-Compete</u>. Employee hereby agrees that within the State of Ohio (the "Restricted Area") he or she shall not, and shall cause any entity that he or she controls or is affiliated with not to, during his or her employment with the Company and for a period of twelve (12) months after the date of Employee's termination of employment with the Company: (a) carry on, engage in, own, manage, operate, finance, consult, contract, be employed by, affiliate or otherwise associate with any entity and/or individual which is engaged in Company's business as described in Exhibit "A" (which is attached hereto and incorporated herein); (b) furnish information to or communicate with any of Company's customers or other company on behalf of any business entity or other person that competes with or may reasonably be construed to compete with company business in any manner directly or indirectly compete with Company; or (c) solicit any customer or supplier of the Company to cease doing business with the Company within the Restricted Area. The parties agree that the Restricted Area is a reasonable geographical limitation for purposes of this Agreement.

4. Exhibit A describes GMS's business as follows:

> GMS is a Professional Employer Organization (PEO). A PEO is defined as an organization that provides an integrated and cost effective approach to

the management and administration of human resources and employer rights, responsibilities, and risk through the establishment and maintenance of an employer relationship with the workers assigned to its clients. Under this relationship GMS provides employee benefits, payroll, human resource services and risk management. GMS also provides health insurance, supplemental benefits, payroll, human resource services and risk management services independent of a PEO relationship.

5. In Section 2 of the Restrictive Covenant Agreement, Spirk and Thur each agreed as follows regarding GMS's proprietary information and trade secrets and non-solicitation:

> 2. <u>Confidentiality</u>. Employee agrees not to disclose or use at any time any proprietary information of the Company or its affiliates, whether he or she has that information committed to memory or it is embodied in writing or any other physical form, except in pursuit of the business activities and interests of the Company or its affiliates or with the prior written consent of the Company. Employee acknowledges and agrees that this prohibition against the disclosure of use of Company's proprietary information exists and continues during and after employee's employment. For the purposes of this Agreement, the phrase "proprietary information of the Company or its affiliates" means all trade secrets and/or confidential information relating to the Company or its affiliates that is protected by law, including but not limited to customer lists, and that Employee obtains by reason of his or her employment with the Company or during the performance of his or her duties. Specifically, Employee agrees not to make known to any person, firm, or corporation the names or addresses of any of the customers of the Company or any other information pertaining to them, or call on, solicit or take away, whether on behalf of the Employee or on behalf of any subsequent employer of the Employee, any of the Company's customers on whom the Employee called or with whom Employee became acquainted during the course of his or her employment with the Company.

6. In Section 3 of the Restrictive Covenant Agreement, Spirk and Thur each agreed as follows regarding solicitation of GMS employees:

> 3. <u>Non-Solicitation</u>. While in Company's employment and for a period of two (2) years after termination of this employment for whatever reason, Employee will not induce or solicit, or attempt to induce or solicit, any other Company officer or employee to leave his or her employment without Company's prior express written consent.

7. In Section 7 of the Restrictive Covenant Agreement, Spirk and Thur each agreed as follows concerning remedies in the event of his breach of the Agreement:

3

> 7. <u>Remedies Upon Breach</u>. The parties agree that if a either party violates any of the covenants contained in this Agreement, the injuries resulting to a party from such a violation will be irreparable, not susceptible to evaluation in monetary terms and the party injured from such violation shall be entitled to injunctive relief to enforce such covenants in addition to all other rights and remedies that may be available at law or equity. The parties further agree that in the event either party finds it necessary to employ attorneys to enforce the covenants and conditions in this Agreement, the breaching party shall pay the reasonable attorney fees and related costs incurred by the non-breaching party to enforce the Agreement.

8. In Section 3 of the Year-End Agreements, Spirk and Thur each agreed to the following:

> 3. Furthermore, in exchange for the Payment, which Employee acknowledges he/she would not otherwise be entitled to receive, Employee reaffirms and incorporates the promises, conditions and restrictions of the Confidentiality and Non-Compete Agreement between the parties hereto. In addition, the restricted area set forth in Employee's original non-compete agreement is acknowledged to include all geographical areas serviced by Employee during the course and scope of his/her employment with GMS unless prohibited by state law.

9. The restrictions set forth above that are contained in the Agreements are reasonably necessary to protect GMS's legitimate protectable interests; are ancillary to an otherwise valid, binding, and enforceable contract; and are reasonable in their scope and restrictions.

10. GMS has presented sufficient evidence at this preliminary stage that Spirk and Thur resigned their employment with GMS and then began working for Vensure, which is also a PEO, in the same or substantially similar sales position as held with GMS.

11. GMS has presented sufficient evidence at this preliminary stage that Vensure was aware that GMS had restrictive covenant agreements with its sales employees and nonetheless hired Spirk and Thur for sales positions.

12. In addition to the promises made by Spirk and Thur in the Agreements with respect to GMS's trade secrets, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61 *et seq.*, also protects GMS's

4

trade secrets from misappropriation and misuse.

13. GMS's trade secrets, including its documents and electronically stored information constituting its customer and prospective customer lists and customer information, marketing and sales strategies, training materials, and its overall business model and procedures, constitute trade secrets under the DTSA and OUTSA.

14. GMS's trade secrets have independent economic value and hold actual or potential economic value from not being generally known outside of GMS, and are the subject of efforts that are reasonable under the circumstances to protect and maintain their secrecy.

15. GMS has demonstrated (a) a likelihood of success on the merits on its claims for breach of contract by Spirk and Thur, for tortious interference with contracts by Vensure, and for violation of the DTSA and OUTSA by all Defendants; (b) irreparable injury without the temporary restraining order; (c) the temporary restraining order will not cause substantial harm to others; and (d) public policy will be served by the temporary restraining order. The injuries that are irreparable to GMS include GMS's loss of goodwill, the misuse and inevitable disclosure of GMS trade secrets by Defendants, and the loss of fair competition that results from the Defendants' breach of noncompete restrictions and the misappropriation of trade secrets. These injuries are not fully compensable by monetary damages.

16. This Order is appropriate without notice for the reasons set forth in the Rule 65 certification submitted to the Court, including but not limited to counsel having attempted on multiple occasions to communicate with Defendants, who have never responded.

Therefore, and for good cause shown,

IT IS HEREBY ORDERED that Spirk, Thur, Vensure, and all others in active concert or participation with them including those who or that receive actual notice of this Order, are restrained and enjoined as follows:

(1) Defendants Spirk and Thur shall comply with the terms of their respective Restrictive Covenant Agreements and Year-End Agreements. Specifically, and without limitation, Defendant Spirk and Thur shall each be enjoined and restrained from:

    (a) continuing further employment with Defendant Vensure, including affiliates, or otherwise competing with GMS in Ohio, in violation of Section 1 of the Restrictive Covenant Agreement with GMS.

    (b) soliciting any customer or supplier of GMS to cease doing business with GMS, in violation of Section 1 of the Restrictive Covenant Agreement.

    (c) disclosing or using at any time any proprietary information of GMS, whether Defendants Spirk or Thur (respectively) has that information committed to memory or it is embodied in writing or any other physical form, in violation of Section 2 of the Restrictive Covenant Agreement with GMS.

    (d) calling on, soliciting or taking away, any GMS customer on whom Defendants Spirk or Thur (respectively) called or with whom Defendants Spirk or Thur (respectively) became acquainted during the course of employment with GMS, in violation of Section 2 of the Restrictive Covenant Agreement with GMS.

    (e) inducing or soliciting, or attempting to induce or solicit, any other GMS officer or employee to leave employment in violation of Section 3 of the Restrictive Covenant Agreement with GMS.

IT IS FURTHER ORDERED that Defendant Vensure, and all others in active concern or participation with Vensure including those who or that receive actual notice of this Order, are restrained and enjoined as follows:

(2) Defendant Vensure shall not interfere with Defendants Spirk's or Thur's compliance with the terms of their respective Restrictive Covenant Agreements and Year-End Agreements, including as outlined in (1) above.

IT IS FURTHER ORDERED that Defendants Spirk, Thur, and Vensure, and all others in active concert or participation with them including those who or that receive actual notice of such Order:

(3) shall immediately return all GMS proprietary information and trade secrets in Defendants Spirk's, Thur's, and/or Vensure's possession, custody, or control; and

(4) shall submit to a comprehensive forensic examination of all computers, servers, and other electronic systems and devices used by Spirk, Thur, and Vensure as necessary and appropriate to identify any of GMS's confidential and/or trade secret information residing thereupon and to facilitate the permanent removal of GMS's confidential and/or trade secret information from Spirk's, Thur's, and Vensure's computers, servers, and other electronic systems and devices, and thereby to protect GMS's trade secrets; and

(5) shall refrain from any acquisition, disclosure, or use of any GMS proprietary information and trade secrets regardless of whether that information is committed to memory or is embodied in writing or any other physical form.

IT IS FURTHER ORDERED that this Temporary Restraining Order shall remain in full force and effect until the Court issues a substantive order resolving all the parties' arguments following the evidentiary hearing which is hereby scheduled for November 12, 2024 at 1:00 p.m. in Courtroom 575 located at 2 South Main St., Akron OH 44304.

Entered this 1st day of November, 2024

/s/ John R. Adams
JUDGE, U.S. DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO